**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC, *Plaintiff,* v. MW INTERNATIONAL VENTURES LLC d/b/a SOCIAL MOBILE, *Defendant.* | Civil Action No. 2:25-cv-00644 <br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant MW International Ventures LLC d/b/a Social Mobile ("Social Mobile" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,676,007 | System and Method for Interpolation Based Transmit Beamforming for MIMO-OFDM with Partial Feedback | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7,676,007 |
| 2. | 7,738,595 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7738595 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 3. | 7,822,141 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7822141 |
| 4. | 7,949,068 | Systems and Methods for Transmitter Diversity | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7949068 |
| 5. | 8,139,544 | Pilot Tone Processing Systems and Methods | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8139544 |
| 6. | 8,812,888 | Systems and Methods for Scanning for A Wake Up Packet Addressed to A Wireless Device | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8812888 |
| 7. | 8,976,714 | Providing and Acquiring A System Information Message In A Wireless Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714 |
| 8. | 9,207,748 | Systems and methods for a wireless device wake-up process including power-save and non-power-save modes | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748 |
| 9. | 7,269,127 | Preamble Structures for Single-Input, Single-Output (SISO) and Multi-Input, Multi-Output (MIMO) Communication Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7269127 |

2.     Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.     Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.     Social Mobile describes itself as a "the leading provider of enterprise mobility solutions" and "an IoT design firm that specializes in developing custom devices for the world's biggest companies in all industries including healthcare, transportation, retail, and defense."

SOCIAL MOBILE, https://socialmobile.com/about/ (last visited June 17, 2025).

5.    Upon information and belief, "RHINO Mobility™ is [Social Mobile's] dedicated portfolio of off-the-shelf, Android Enterprise devices catering to a range of transportation companies    from    SMB    to    global    enterprises."    SOCIAL    MOBILE, https://socialmobile.com/transportation/ (last visited June 17, 2025).

6.    Upon information and belief, Rhino Mobility is a brand and/or subsidiary of Defendant that is a mere alter ego or agent of Defendant that is disregarded as an entity and is fully and directly controlled by Defendant, and any such sales of any Accused Products that include the Rhino Mobility branding are the responsibility of (and such acts directly attributed to) Defendant.

7.    Upon information and belief based on public information, Social Mobile is a corporation organized and existing under the laws of Florida.

8.    Upon information and belief based on public information, Social Mobile maintains its corporate headquarters at 2057 Coolidge St., Hollywood, FL 33020.

9.    Upon information and belief based on public information, Social Mobile maintains a regular places of business in this District through the presence of its employees in this District. *See, e.g.*, https://www.linkedin.com/company/socialmobile/people/?facetGeoRegion=102127797 (last visited June 17, 2025) (showing Social Mobile's Chief Product Officer, Senior Solutions Engineer and Advisory Board member are located in Texas, including in this District.)

10.    Social Mobile's registered agent is Justin Brook who is located at 1175 NE 125th Street, Ste. 512, Miami, FL 33161.

### JURISDICTION AND VENUE

11.    Integral Wireless repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

12.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained established and regular places of business in this District and have committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

15.    For example, on information and belief, at least some of Social Mobile's employees and board members are located in in this District.  *See, e.g.*, https://www.linkedin.com/company/socialmobile/people/?facetGeoRegion=102127797    (last visited June 17, 2025) (showing Social Mobile's Chief Product Officer, Senior Solutions Engineer and Advisory Board member are located in Texas, including in this District.)

16.    On information and belief, Defendant Social Mobile is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

17.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

18.     For example, Social Mobile sells its products to Texas residents, including residents in this District, via several retail websites. *See, e.g.,* BARCODES, https://www.barcodesinc.com/social-mobile/ (last visited June 17, 2025); BARCODE DISCOUNT, https://www.barcodediscount.com/shop?search=Social+Mobile+Rhino&cat= (last visited June 17, 2025); BARCODE GIANT, https://www.barcodegiant.com/social-mobile/part-rhino-c6.htm (last visited June 17, 2025).

19.    Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

20.    Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and using (including through testing) the Accused Products.

21.    Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-users to use the Accused Products.

22.    Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-

users through its use of the Accused Products.

23.    Such a corporate and commercial presence by Defendant Social Mobile furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing products in Texas, including in this District.  Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Social Mobile has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Social Mobile would not offend traditional notions of fair play and substantial justice.

24.    Based on Defendant Social Mobile's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Social Mobile knows that Texas is a termination point of the established distribution channel for the sale and use of Social Mobile products.  Social Mobile, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis.  *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc*., 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

25.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant Social Mobile has committed acts of infringement in this District.  As further alleged herein, Defendant Social Mobile, via its own operations and employees located there, has a regular and established place of business, in this District.  Accordingly, Social Mobile may be sued in this district under 28 U.S.C. § 1400(b)

## THE ACCUSED PRODUCTS

26.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

27.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various 802.11ac compatible devices, 802.11n compatible devices, 5G compatible devices, and Bluetooth compatible devices including, but not limited to, the "Accused Products" set forth below:

- RHINO C10
- RHINO C6
- RHINO C6 Lite
- RHINO C6D
- RHINO C6R
- RHINO D2 5G
- RHINO H1 5G
- RHINO K27p
- RHINO M10p
- RHINO T100
- RHINO T105 5G
- RHINO T5se
- RHINO T80
- RHINO T8
- Social Mobile One
- RHINO Helium Pro

- RHINO PACE A1

28.    Defendant also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, *Rhino C6 User Manual*, Rhino Mobility, available at https://support.rhinomobility.com/assets/docs/c6/C6_UM_Final.pdf (last visited June 17, 2025) (providing user manual for using Rhino C6); *Rhino H1 User Manual*, Rhino Mobility, available at https://rhinomobility.com/assets/docs/h1/SM_RHINO_H1_UM.pdf (last visited June 17, 2025) (providing user manual for using Rhino H1); *How to Power On Your Rhino Device*, Rhino Mobility, available at https://rhinomobility.com/support/power-on (last visited June 17, 2025) (providing instructions regarding powering on Rhino K27p, M10p and PACE A1); *Rhino T100 User Manual*, Rhino Mobility, available at https://rhinomobility.com/assets/docs/t100/T100_UM_Final.pdf (last visited June 17, 2025) (providing user manual for using Rhino T100); *Rhino T105 User Manual*, Rhino Mobility, available at https://rhinomobility.com/assets/docs/t105/SM_Rhino_T105_UM.pdf (last visited June 17, 2025) (providing user manual for using Rhino T105); *Rhino T5se*, Rhino Mobility, available at https://rhinomobility.com/devices/t5se (last visited June 17, 2025) (providing specifications of Rhino T5se); *Rhino T80 User Manual*, Rhino Mobility, available at https://rhinomobility.com/assets/docs/t80/T80_UM_Final.pdf (last visited June 17, 2025) (providing user manual for using Rhino T80); *Rhino T8*, Rhino Mobility, available at https://rhinomobility.com/devices/t8 (last visited June 17, 2025) (providing specifications of Rhino T8); *Rhino D2*, Rhino Mobility, available at https://rhinomobility.com/devices/d2 (last visited June 17, 2025) (providing specifications of Rhino D2); Social Mobile One, Social Mobile, available at https://socialmobile.com/social-mobile-one/ (describing offerings of Social Mobile One).

29.     Defendant also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners.  *See, e.g.*, BARCODES, https://www.barcodesinc.com/social-mobile/ (last visited June 17, 2025); BARCODE DISCOUNT, https://www.barcodediscount.com/shop?search=Social+Mobile+Rhino&cat= (last visited June 17, 2025); BARCODE GIANT, https://www.barcodegiant.com/social-mobile/part-rhino-c6.htm (last visited June 17, 2025).  Those sales occur in the United States, and throughout Texas, including in this District.

30.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,676,007

31.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

32.     The USPTO duly issued U.S. Patent No. 7,676,007 (hereinafter, the "'007 patent") on March 9, 2010, after full and fair examination of Application No. 11/188,233 which was filed on July 21, 2005.  *See* '007 patent at p. 1.

33.     Integral Wireless owns all substantial rights, interest, and title in and to the '007 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

34.     The claims of the '007 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that relate to a multiple input multiple output system using orthogonal frequency division multiplexing, and more particularly, to systems using partial feedback for

interpolation based transmit beamforming.

35.    The written description of the '007 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.    Defendant has directly infringed and continue to directly infringe one or more claims of the '007 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

37.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '007 patent, as detailed in **Exhibit A** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,676,007).

38.    For example, Defendant, through the provision and use of the Accused Products, including, but not limited to, the Social Mobile 802.11ac compatible devices, provides communication apparatuses comprising: a plurality of antennas; and a transmitter coupled to the antennas and configured to provide to the antennas a plurality of output signals on a plurality of subcarriers for transmission to a receiver of another communication apparatus, wherein: the transmitter is configured to provide the output signals in response to a plurality of input signals and limited feedback information; the transmitter is configured to receive the limited feedback information from the receiver; the limited feedback information includes interpolation information and beamforming vectors for a subset of the subcarrriers; the transmitter is configured to derive beamforming vectors for at least one subcarrier of the plurality of subcarriers not included in the subset based at least on an interpolation of the beamforming vectors for a subset of the subcarriers;

the interpolation is based at least in part on the interpolation information; and the interpolation information includes phase values.

39.    Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Integral Wireless' patent rights.

40.    Defendant willfully blinded itself to the existence of the '007 patent and Defendant's infringement, but Defendant had actual knowledge of said patent since at least the time of receiving the original complaint in this action.

41.    Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '007 patent by inducing others to directly infringe said claims.

42.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '007 patent by providing or requiring use of the Accused Products.

43.    Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '007 patent, including, for example, claim 1.

44.    Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

45.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '007 patent and with the knowledge that the induced acts constitute infringement.

46.     Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '007 patent.

47.     Defendant's inducement is ongoing.

48.     Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '007 patent.

49.     Defendant has contributed to the direct infringement of one or more claims of the '007 patent by their personnel, contractors, and customers.

50.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '007 patent, including, for example, claim 1.

51.     The special features constitute a material part of the invention of one or more of the claims of the '007 patent and are not staple articles of commerce suitable for substantial non-infringing use.

52.     Defendant's contributory infringement is ongoing.

53.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

54.     Defendant's direct infringement of one or more claims of the '007 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

55.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '007 patent.

56.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '007 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

57.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,738,595

58.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

59.     The USPTO duly issued U.S. Patent No. 7,738,595 (hereinafter, the "'595 patent") on June 15, 2010, after full and fair examination of Application No. 10/884,633 which was filed on July 2, 2004. *See* '595 patent at p. 1.

60.     Integral Wireless owns all substantial rights, interest, and title in and to the '595 patent, including the sole and exclusive right to prosecute this action and enforce the '595 patent against infringers and to collect damages for all relevant times.

61.     The claims of the '595 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve upon systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

62.     The written description of the '595 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.     Defendant has directly infringed one or more claims of the '595 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

64.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '595 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,738,595).

65.     As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Rhino Mobility 802.11n compatible devices, provide MIMO signal transmitters, comprising: at least two vector multipliers, each vector multiplier configured to weight a respective input signal with a vector to form a weighted signal; and at least two antennas comprising a transmit array, the transmit array configured to transmit each weighted signal along a respective signal path; wherein each vector is computed using a unit magnitude decomposition of a transmission channel matrix; and wherein the unit magnitude decomposition includes decomposing at least a portion of the transmission channel matrix into a unitary matrix with eigenvalues that lie substantially on a unit circle of a complex plane.

66.     Defendant has a policy or practice of not reviewing the patents of others, including

instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

67.    Defendant willfully blinded itself to the existence of the '595 patent and Defendant's infringement, but Defendant had actual knowledge of the '595 patent since at least the time of receiving the original complaint in this action.

68.    Defendant has also indirectly infringed the '595 patent by inducing others to directly infringe one or more claims of said patent.

69.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '595 patent by providing or requiring use of the Accused Products.

70.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '595 patent, including, for example, claim 1 of the '595 patent.

71.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

72.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '595 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '595 patent.

73.     Defendant's inducement is ongoing.

74.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '595 patent.

75.     Defendant has contributed to the direct infringement of one or more claims of the '595 patent by their personnel, contractors, and customers.

76.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '595 patent, including, for example, claim 1.

77.     The special features constitute a material part of the invention of one or more of the claims of the '595 patent and are not staple articles of commerce suitable for substantial non-infringing use.

78.     Defendant's contributory infringement is ongoing.

79.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

80.     Defendant's direct infringement of one or more claims of the '595 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

81.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '595 patent.

82.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '595 patent.

Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

83.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,822,141

84.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

85.    The USPTO duly issued U.S. Patent No. 7,822,141 (hereinafter, the "'141 patent") on October 26, 2010, after full and fair examination of Application No.: 11/469,075 which was filed on August 13, 2006.  *See* '141 patent at p. 1.

86.    Integral Wireless owns all substantial rights, interest, and title in and to the '141 patent, including the sole and exclusive right to prosecute this action and enforce the '141 patent against infringers and to collect damages for all relevant times.

87.    The claims of the '141 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

88.    The written description of the '141 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.    Defendant has directly infringed one or more claims of the '141 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

90.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '141 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141).

91.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Rhino 802.11n compatible devices, perform a method comprising: method, comprising: generating two or more forward weighted signals by weighting two or more input signals with initial transmitter weights Vi associated with two or more forward channels; transmitting the two or more forward weighted signals via two or more forward antennas; receiving, at the two or more forward antennas, two or more reverse weighted signals transmitted via two or more reverse antennas corresponding to two or more reverse channels, the two or more reverse weighted signals formed from two or more reverse signals with receiver weights Ui associated with the two or more reverse channels; determining the receiver weights Ui associated with each of the two or more reverse weighted signals; choosing updated transmitter weights Vi′ for the two or more forward channels based at least in part on the determined receiver weights Ui to provide a target level of gain for the two or more forward channels; and iteratively repeating the transmitting, receiving, determining, or combinations thereof, for subsequent transmissions using the two or more forward channels until the updated transmitter weights Vi′,

the receiver weights Ui, or combinations thereof, are at target values.

92.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '141 patent.

93.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,949,068

94.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

95.     The USPTO duly issued U.S. Patent No. 7,949,068 (hereinafter, the "'068 patent") on May 24, 2011, after full and fair examination of Application No. 12/698,090 which was filed on February 1, 2010.  *See* '068 patent at p. 1.

96.     Integral Wireless owns all substantial rights, interest, and title in and to the '068 patent, including the sole and exclusive right to prosecute this action and enforce the '068 patent against infringers and to collect damages for all relevant times.

97.     The claims of the '068 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve systems and methods for data transmission.

98.     The written description of the '068 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

99.    Defendant has directly infringed one or more claims of the '068 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

100.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 17 of the '068 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,949,068).

101.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Rhino 802.11n compatible devices, performs a method comprising: generating a set of one or more extension data streams based on a set of base data streams, wherein at least one data stream of the set of one or more extension data streams is the product of a matrix multiplication of the set of base data streams with a unitary matrix; and initiating the transmission of each data stream of the sets of base and one or more extension data streams from a separate corresponding transmit antenna.

102.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

103.    Defendant willfully blinded itself to the existence of the '068 patent and Defendant's infringement, but Defendant had actual knowledge of the '068 patent since at least the time of receiving the original complaint in this action.

104.    Defendant has also indirectly infringed one or more claims of the '068 patent by inducing others to directly infringe said claims.

105.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '068 patent by providing or requiring use of the Accused Products.

106.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '068 patent, including, for example, claim 17.

107.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

108.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '068 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '068 patent.

109.    Defendant's inducement is ongoing.

110.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '068 patent.

111.    Defendant has contributed to the direct infringement of one or more claims of the '068 patent by their personnel, contractors, and customers.

112.    The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '068 patent, including, for example, claim 17.

113.    The special features constitute a material part of the invention of one or more of the claims of the '068 patent and are not staple articles of commerce suitable for substantial non-infringing use.

114.    Defendant's contributory infringement is ongoing.

115.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

116.    Defendant's direct infringement of one or more claims of the '068 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

117.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '068 patent.

118.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '068 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

119.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,139,544

120.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

121.    The USPTO duly issued U.S. Patent No. 8,139,544 (hereinafter, the "'544 patent") on March 20, 2012, after full and fair examination of Application No. 11/121,743, which was filed on May 4, 2005.  *See* '544 patent at p. 1.

122.    Integral Wireless owns all substantial rights, interest, and title in and to the '544 patent, including the sole and exclusive right to prosecute this action and enforce the '544 patent against infringers and to collect damages for all relevant times.

123.    The claims of the '544 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve wireless communication systems and methods by disclosing a pilot tone processing system comprises pilot tone logic configured to receive first pilot tone data corresponding to a first transmit antenna and second pilot tone data corresponding to a second transmit antenna and separate the first pilot tone data from the second pilot tone data.

124.    The written description of the '544 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

125.    Defendant has directly infringed one or more claims of the '544 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

126.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 15 of the '544 patent, as detailed in **<u>Exhibit E</u>** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 8,139,544).

127.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Rhino 802.11n compatible devices, provides a system comprising: a receiver device configured to: receive a first signal transmitted on a first communications, from a first antenna, path and a second signal transmitted, from a second antenna, on a second communications path, wherein the first signal includes a first set of data subcarriers and a first set of pilot subcarriers, and wherein the second signal includes a second set of data subcarriers and a second set of pilot subcarriers; separate the first set of data subcarriers from the second set of data subcarriers and separate the first set of pilot subcarriers from the second set of pilot subcarriers according to a signal separating function, wherein the signal separating function is based on a first channel estimate for the first communications path and a second channel estimate for the second communications path; and match-filter combine at least one pilot subcarrier from the first set of pilot subcarriers with at least one pilot subcarrier of the second set of pilot subcarriers.

128.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

129.    Defendant willfully blinded itself to the existence of the '544 patent and Defendant's

infringement, but Defendant had actual knowledge of the '544 patent since at least the time of receiving the original complaint in this action.

130.    Defendant has also indirectly infringed one or more claims of the '544 patent by inducing others to directly infringe said claims.

131.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '544 patent by providing or requiring use of the Accused Products.

132.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '544 patent, including, for example, claim 15.

133.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

134.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '544 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '544 patent.

135.    Defendant's inducement is ongoing.

136.    Defendant has also indirectly infringed by contributing to the infringement of one or

more claims of the '544 patent.

137.    Defendant has contributed to the direct infringement of one or more claims of the '544 patent by their personnel, contractors, and customers.

138.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '544 patent, including, for example, claim 15.

139.    The special features constitute a material part of the invention of one or more of the claims of the '544 patent and are not staple articles of commerce suitable for substantial non-infringing use.

140.    Defendant's contributory infringement is ongoing.

141.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

142.    Defendant's direct infringement of one or more claims of the '544 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

143.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '544 patent.

144.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '544 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own

ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

145.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,812,888**

146.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

147.    The USPTO duly issued U.S. Patent No. 8,812,888 (hereinafter, the "'888 patent") on August 19, 2014, after full and fair examination of Application No. 13/901,817 which was filed on May 24, 2013.  *See* '888 patent at p. 1.

148.    Integral Wireless owns all substantial rights, interest, and title in and to the '888 patent, including the sole and exclusive right to prosecute this action and enforce the '888 patent against infringers and to collect damages for all relevant times.

149.    The claims of the '888 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve the function and operation of computing devices by providing systems and methods for accessing computing devices over wireless local area networks and more particularly to systems and methods for waking computing devices from a powered down or sleep state with signals sent over wireless local area networks.

150.    The written description of the '888 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

151.    Defendant has directly infringed one or more claims of the '888 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

152.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '888 patent, as detailed in **Exhibit F1** and **Exhibit F2** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 8,812,888).

153.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Rhino Bluetooth compatible devices, performs a method comprising: scanning for a wake-up packet addressed to a wireless device, wherein the wake-up packet is configured to cause the wireless device to initiate a switch from operating in a first power mode to operating in a second power mode, wherein the scanning is performed for a predetermined period of time; and ceasing to scan for the wake-up packet addressed to the wireless device in response to not receiving the wake-up packet after the predetermined period of time has elapsed.

154.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '888 patent.

155.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '888 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license

technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

156.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 8,976,714

157.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

158.    The USPTO duly issued U.S. Patent No. 8,976,714 (hereinafter, the "'714 patent") on March 10, 2015, after full and fair examination of Application No. 13/133,076 and PCT No. PCT/EP2009/008798 which has a § 371 (c)(1), (2), (4) date of November 15, 2011.  *See* '714 patent at p. 1.

159.    Integral Wireless owns all substantial rights, interest, and title in and to the '714 patent, including the sole and exclusive right to prosecute this action and enforce the '714 patent against infringers and to collect damages for all relevant times.

160.    The claims of the '714 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve receiving system information messages by disclosing a user equipment that is configured to receive si-Windowlength information in a SI type 1 message.

161.    The written description of the '714 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

162.    Defendant has directly infringed one or more claims of the '714 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

163.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '714 patent, as detailed in **Exhibit G** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 8,976,714).

164.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Social Mobile and Rhino 5G compatible devices, provides a user equipment (UE) comprising: a receiver configured to receive si-Windowlength information, wherein the si-Windowlength information is received in a system information (SI) type 1 message; a processor configured to calculate a downlink (DL) subframe wherein a SI message starts, wherein the calculated DL subframe is based on a total number of DL subframes contained in a radio frame; the processor further configured to calculate in the radio frame where the SI message starts, wherein the calculated radio frame is based on the total number of DL subframes contained in the radio frame; and the receiver further configured to receive the SI message, in the calculated DL subframe of the calculated radio frame, during a period provided by the si-Windowlength information.

165.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind

of Integral Wireless' patent rights.

166.    Defendant willfully blinded itself to the existence of the '714 patent and Defendant's infringement, but Defendant had actual knowledge of the '714 patent since at least the time of receiving the original complaint in this action.

167.    Defendant has also indirectly infringed one or more claims of the '714 patent by inducing others to directly infringe said claims.

168.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '714 patent by providing or requiring use of the Accused Products.

169.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '714 patent, including, for example, claim 1.

170.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

171.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '714 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '714 patent.

172.     Defendant's inducement is ongoing.

173.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '714 patent.

174.     Defendant has contributed to the direct infringement of one or more claims of the '714 patent by their personnel, contractors, and customers.

175.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '714 patent, including, for example, claim 1.

176.     The special features constitute a material part of the invention of one or more of the claims of the '714 patent and are not staple articles of commerce suitable for substantial non-infringing use.

177.     Defendant's contributory infringement is ongoing.

178.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

179.     Defendant's direct infringement of one or more claims of the '714 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

180.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '714 patent.

181.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '714 patent.

Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

182.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 9,207,748

183.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

184.     The USPTO duly issued U.S. Patent No. 9,207,748 (hereinafter, the "'748 patent") on December 8, 2015, after full and fair examination of Application No. 14/446,481 which was filed on July 30, 2014. *See* '748 patent at p. 1.

185.     Integral Wireless owns all substantial rights, interest, and title in and to the '748 patent, including the sole and exclusive right to prosecute this action and enforce the '748 patent against infringers and to collect damages for all relevant times.

186.     The claims of the '748 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve systems and methods for accessing computing devices over wireless local area networks and more particularly to systems and methods for waking computing devices from a powered down or sleep state with signals sent over wireless local area networks.

187.    The written description of the '748 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

188.    Defendant has directly infringed one or more claims of the '748 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

189.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 8 of the '748 patent, as detailed in **Exhibit H1** and **Exhibit H2** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748).

190.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Rhino Bluetooth compatible devices, provides a computer comprising: a controller configured to trigger a wake-up detection mode at a wireless device for a pre-determined time period; and a communication interface coupled to the controller and configured to receive a wake-up packet addressed to the wireless device, wherein the wake-up packet is configured to cause the wireless device to initiate a switch from operating in a power-save mode to operating in a non-power save power mode; wherein the controller is further configured to perform a wake-up process at the wireless device to operate in the non-power save mode in response to receiving the wake-up packet and to exit the wake-up detection mode if the wake-up process is performed or the predetermined time period is exceeded.

191.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '748 patent.

192.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 7,269,127**

193.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

194.    The USPTO duly issued U.S. Patent No. 7,269,127 (hereinafter, the "'127 patent") on September 11, 2007, after full and fair examination of Application No. 10/264,546 which was filed on October 4, 2002.  *See* '127 patent at p. 1.

195.    Integral Wireless owns all substantial rights, interest, and title in and to the '127 patent, including the sole and exclusive right to prosecute this action and enforce the '127 patent against infringers and to collect damages for all relevant times.

196.    The claims of the '127 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve communication systems and, more particularly, to single-input, single-output (SISO) and multi-input, multi-output (MIMO) communication system.

197.    The written description of the '127 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

198.    Defendant has directly infringed one or more claims of the '127 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

199.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 20 of the '127 patent, as detailed in **Exhibit I** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,269,127).

200.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Rhino 802.11n compatible devices, performs a method of forming a frame structure that is transmitted in a communication system, the method comprising the steps of: providing data blocks; providing training blocks; combining the data blocks and training blocks in a parallel format to provide a parallel combination; taking an inverse discrete fourier transform (IDFT) of the parallel combination to form IDFT blocks; inserting the cyclic prefixes between the IDFT blocks to form parallel symbols; converting the parallel symbols to serial format to form a preamble structure and a data structure, the preamble structure comprising at least one training symbol and an enhanced training symbol; the data structure comprising a plurality of data symbols; forming data symbols such that each data symbol comprises a cyclic prefix and a data block, the cyclic prefix having a number of samples G, the data block having a number of samples N; and forming a preamble structure having an enhanced training symbol, the enhanced training symbol comprising a cyclic prefix and a training block, the cyclic prefix having a number of samples G, the training block having a number of samples $N_I$ such that $N_I=N/I$, where I is an integer and $G=N_I/4$.

201.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '127 patent.

202.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

203.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

204.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '007 patent, the '595 patent, the '068 patent, the '544 patent, and the '714 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '007 patent, the

'595 patent, the '068 patent, the '544 patent, and the '714 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 18, 2025</u>

Respectfully submitted,

By: */s/ James F. McDonough, III*

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC** 659
Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) * **ROZIER HARDT MCDONOUGH, PLLC** 1500 K
Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) * **ROZIER HARDT MCDONOUGH, PLLC** 712 W. 14th
Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC*

* Admitted to the Eastern District of Texas

## List of Attachments

- Civil Cover Sheet
- Proposed Summons

## List of Exhibits

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,676,007

B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,738,595

C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141

D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,949,068

E.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,139,544

F.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,812,888

G.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,976,714

H.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748

I.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,269,127

## List of Supporting Links

1. U.S. Patent No. 7,676,007, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7676007.

2. U.S. Patent No. 7,738,595, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7738595.

3. U.S. Patent No. 7,822,141, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7822141.

4. U.S. Patent No. 7,949,068, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7949068.

5. U.S. Patent No. 8,139,544, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8139544.

6. U.S. Patent No. 8,812,888, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8812888.

7. U.S. Patent No. 8,976,714, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714.

8. U.S. Patent No. 9,207,748, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748 .

9. U.S. Patent No. 7,269,127, USPTO,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7269127 .